UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SCHNITZER STEEL INDUSTRIES, INC., <br> Plaintiff, <br><br> v. <br><br> JAMES DINGMAN; and NORTH COUNTRY CATALYST, LLC, <br> Defendants. | C.A. No. 22-361-JJM-LDA |

**MEMORANDUM AND ORDER**

JOHN J. MCCONNELL, JR., Chief United States District Judge.

Before the Court is Plaintiff Schnitzer Steel Industries, Inc.'s (Schnitzer) Motion to Dismiss Counterclaim Pursuant to F.R.C.P. 12 (b)(6). ECF No. 25. Schnitzer seeks to dismiss Defendant James Dingman's counterclaim of fraud in the inducement and fraud, which accompanied his answer. ECF No. 21. The Court GRANTS Schnitzer's Motion to Dismiss. ECF No. 25.

I.  **BACKGROUND**

Schnitzer filed this case (ECF No. 1) and then quickly moved for a temporary restraining order ("TRO") and preliminary injunction. ECF No. 3. Schnitzer sought to restrain Mr. Dingman, a former employee, from operating a metal recycling business in violation of the covenant not to compete to which he agreed as part of his employment with Metals Recycling LLC ("Metals"), a wholly owned subsidiary of Schnitzer's. *Id.* The Court denied Schnitzer's motion for a TRO but reserved

judgment on its motion for a preliminary injunction. *Schnitzer Steel Indus., Inc. v. Dingman*, No. 22-361-JJM-LDA, 2022 WL 16797058, at *1 (D.R.I. Nov. 8, 2022). The Court thus assumes familiarity with the facts, which the parties strongly dispute to begin with. *See id.* (rehearsing the relevant facts). Mr. Dingman subsequently filed an answer that included a counterclaim for fraud in the inducement and fraud.[1] ECF No. 21.

## II.  STANDARDS OF REVIEW

### A. Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), Mr. Dingman must present facts that make his claim plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To determine plausibility, the Court must first review the complaint and separate conclusory legal allegations from allegations of fact. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (citation omitted). Next, the Court must consider whether the remaining factual allegations give rise to a plausible claim of relief. *See id.* (citations omitted).

To state a plausible claim, a complaint need not detail factual allegations, but must recite facts sufficient at least to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" cannot suffice. *Ashcroft*

---

[1] As Schnitzer notes, the counterclaim does not plead a claim of fraud separate from the claim of fraud in the inducement. ECF No. 25-1 at 1 n. 1. The Court thus only evaluates the counterclaim as a claim for fraud in the inducement.

2

v. *Iqbal*, 556 U.S. 662, 678 (2009). Nor does a complaint suffice if it tenders "naked assertion[s] devoid of further factual enhancement." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557); *see also Soto-Torres v. Fraticelli*, 654 F.3d 153, 159 (1st Cir. 2011) (holding that combined allegations, taken as true, "must state a plausible, not a merely conceivable, case for relief").

### B. Pleading Fraud Under Federal Rule of Civil Procedure 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)") requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b)'s heightened pleading standard also covers state-law claims for fraud that are filed in federal court. *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009) (citation omitted). A party must specifically identify any false statements, who made these false statements, and on what grounds it can infer scienter. *Id.* In other words, "a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint *also* sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." *Id.* (alteration in original) (citation omitted).

### III. DISCUSSION

The parties' briefs present two issues for the Court to decide. The first is a disagreement about which state's law applies to the counterclaim of fraud in the

3

inducement. The second is whether Mr. Dingman has stated a claim for fraud in the inducement. The Court addresses each issue in turn.

### A. Choice of Law for Mr. Dingman's Fraudulent Inducement Counterclaim

As an initial matter, the parties dispute which state's law applies to Mr. Dingman's counterclaim. *See* ECF Nos. 25-1 at 3 (claiming Oregon law), 26-1 at 5 (claiming Rhode Island law). Schnitzer, without further discussion, included a footnote that states that "Oregon law applies pursuant to the Agreement at issue." ECF No. 25-1 at 3 n. 2. As Mr. Dingman notes, this statement is curious for a couple of reasons. *See* ECF No. 26-1 at 5 n. 3 (internal quotation marks omitted) ("Schnitzer is clearly mistaken in asserting that Oregon law applies . . . . Section 6(c) of the Agreement states [that Rhode Island law applies]."). If Schnitzer is referring to the disputed employment agreement between Mr. Dingman and Metals[2] (the "Agreement") when it refers to "the Agreement at issue," then Schnitzer clearly overlooked the fact that the Agreement explicitly states otherwise. *See* ECF No. 3, Ex. A at 4 ("This Agreement . . . shall be construed according to the laws of the State of Rhode Island."). Moreover, after Mr. Dingman raised this issue in his response brief, Schnitzer did not even acknowledge it one way or the other in its reply brief. *See* ECF No. 27.

---

[2] If, however, Schnitzer was suggesting that Oregon law applies for another reason—perhaps because that is the state in which it is incorporated—the language "pursuant to the Agreement at issue" is confusingly specific to another issue in this case.

4

In any event, the Court finds that Rhode Island law applies to Mr. Dingman's counterclaim because the Agreement explicitly states that it must be construed according to Rhode Island law, and Mr. Dingman does not specifically challenge the choice of law provision. The only reason to think that Rhode Island law would not apply pursuant to the agreement's language is if Mr. Dingman argued that the choice of law provision was invalid because of Schnitzer's fraudulently inducing him into agreeing to the contract. *See, e.g., Guzman v. Jan-Pro Cleaning Sys., Inc.*, 839 A.2d 504, 507 (R.I. 2003) (citations omitted) (noting that a party is not bound by a contract into which it entered based on fraudulent inducement). However, some jurisdictions distinguish between provisions of the contract to which the parties agreed under fraudulent pretenses and those to which they did not. *See, e.g., Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n. 14 (1974) (citation omitted) (Adhering to a forum-selection clause does not mean that, "any time a dispute arising out of a transaction is based upon an allegation of fraud . . . the clause is unenforceable. Rather . . . an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion"). Rhode Island has explicitly recognized this principle in the context of arbitration provisions. *Window Concepts, Inc. v. Daly*, No. Civ. A. 99-434, 2001 WL 1452790, at *6 (R.I. 2001) (citing *Bjartmarz v. Pinnacle Real Est. Tax Serv.*, 771 A.2d 124, 127 (R.I. 2001)) ("When a party claims fraud in the inducement in the acceptance of an arbitration provision, itself, such a matter is appropriate for adjudication by the Court. However, where the fraud in the inducement is directed generally at the contract, the matter is still

referable to arbitration."). But this argument would only make sense if Mr. Dingman were the one seeking to apply another state's law. It would be an odd position for a party to ask the Court to enforce the contract except for the choice of law provision.[3] And in lieu of a compelling reason to apply another state's law, the Court will refrain from doing so. Accordingly, the Court finds that Rhode Island law applies to Mr. Dingman's counterclaim.

### B. Whether Mr. Dingman Adequately Pled a Counterclaim for Fraud in the Inducement

Turning to the merits of the counterclaim, Mr. Dingman asserts two theories of fraud. *See* ECF No. 26-1 at 5-6. The first is that Schnitzer designed the employment agreement to deceive Mr. Dingman into thinking that he was contracting with just its subsidiary, Metals, when he was actually contracting with Schnitzer as the broader parent company. *Id.* at 6-7. The second is that Schnitzer deceived Mr. Dingman into thinking that he was signing a covenant not to compete that would protect its legitimate business interests, when he was actually signing away the rights to do business with his preexisting clients. *Id.* at 7-11. Schnitzer responds that these allegations lack any factual particularity that Rule 9(b) requires. ECF No. 25-1 at 3. Schnitzer additionally argues only two paragraphs even allege fraud. *Id.* (pointing to paragraphs 30 and 34 of the counterclaim).

---

[3] Again, the suggestion that Oregon applies was more likely a simple oversight on Schnitzer's part than such a tortuous ask.

6

"Fraud in the inducement is defined as '[m]isrepresentation as to the terms, quality or other aspects of a contractual relation, venture or other transaction that leads a person to agree to enter into the transaction with a false impression or understanding of the risks, duties or obligations she has undertaken.'" *Bourdon's, Inc. v. Ecin Indus., Inc.*, 704 A.2d 747, 753 (R.I. 1997) (alteration in original) (quoting BLACK'S LAW DICTIONARY 661 (6th ed. 1990)). This definition reduces to a two-part test, which requires that: 1. Plaintiff (counterclaimant here) show that the defendant made a false representation, thus inducing Plaintiff's reliance on that representation; and 2. Plaintiff justifiably relied on this false representation. *W. Rsrv. Life Assur. Co. of Ohio v. Caramadre*, 847 F. Supp. 2d 329, 337 (D.R.I. 2012), *aff'd sub nom, W. Rsrv. Life Assur. Co. of Ohio v. ADM Assocs.*, LLC, 793 F.3d 168 (1st Cir. 2015) (quoting *Zaino v. Zaino*, 818 A.2d 630, 638 (R.I. 2003)). With this legal background in mind, the Court turns to each of Mr. Dingman's assertions.

### 1. Fraudulent Inducement in the Scope of Mr. Dingman's Employment Agreement

The thrust of Mr. Dingman's counterclaim is that Schnitzer led him to believe that that the contract functioned significantly differently than Schnitzer thought it would. *See* ECF No. 26-1 at 1. Although some of the contractual terms are ambiguous, others are not. For example, despite Mr. Dingman's assertion that Schnitzer is now seeking to use its national footprint as the relevant geographic area of the covenant not to compete (*see* ECF No. 26-1 at 6-7), the Agreement clearly refers

7

to "the Northeast United States region to which [Mr. Dingman] is assigned."[4] ECF No. 3, Ex. A at 1-2. To claim that he believed this phrase meant nothing would require Mr. Dingman to unveil some sort of elaborate deception that Schnitzer pulled off to defy the plain reading of such language. Yet Mr. Dingman points to no specific facts from which the Court could even infer that Schnitzer intended to induce him into believing this farse. He only makes more generalized assertions, pointing to discrepancies like the fact that his employment agreement was with Metals, but Schnitzer is the only named plaintiff here that seeks to enforce that contract. *See, e.g.*, ECF No. 26-1 at 6-7 ("The Counterclaim alleges the specific identification of 'Metals Recycling' in first sentence of the Agreement (and in the signature block) was, by the design of the Agreement, to induce [Mr.] Dingman to enter the agreement based on the scope [of] Metals['] much smaller business . . . .").

As for the more ambiguous terms of the Agreement (such as the language that denotes for whose benefit the Agreement runs), Mr. Dingman fails to allege facts with the requisite particularity that Rule 9(b) requires. Even if "the Agreement, by its design, was intended to deceive [Mr.] Dingman as to whom the promises were made" (*Id.* at 7), he must plead facts to support that theory, rather than the far more common occurrence that the Agreement was just drafted ambiguously. *See Iqbal*, 556 U.S. at 663-64 (citation omitted) ("[D]etermining whether a complaint states a plausible

---

[4] The Agreement also notes that the covenant not to compete applies to other regions to which Mr. Dingman might be assigned, but there is no suggestion that he ever worked in another region. ECF No. 3, Ex. A at 2.

claim is context specific, requiring the reviewing court to draw on its experience and common sense.").

### 2. Fraudulent Inducement in the Extent of the Covenant Not to Compete

Mr. Dingman further asserts that the covenant not to compete was also a ploy to "[s]windle [him] [o]ut of [h]is [p]re-[e]xisting '[b]ook of [b]usiness.'" ECF No. 26-1 at 7. This argument also runs up against pleading deficiencies. Mr. Dingman alleges that Schnitzer recruited him to lead a team that would focus on the resale of catalytic converters. ECF No. 21 at 13-14, ¶ 14. He also alleges that Schnitzer failed to disclose to him that it intended the covenant not to compete to function as part of a contract to effectively purchase his book of business, instead of as a protection of Metals' legitimate business interests.[5] *Id.* at 14-5, ¶¶ 16, 18. But Mr. Dingman rests his case on omissions like this, asking the Court to make all the necessary inferences from these generalized circumstances. Mr. Dingman does not point to specific statements or representations by Schnitzer that ostensibly suggested one reason for the covenant when he first signed it while secretly contemplating another.

Moreover, that the covenant was not narrowly tailored to protect legitimate business interests does not necessarily suggest that Schnitzer harbored nefarious intentions. *See id.* at 17-18, ¶¶ 29-30 ("The 'Covenant Not to Compete' between [Mr.]

---

[5] It is also worth nothing Schnitzer's after-the-fact litigation position in which it seeks broad enforcement of the covenant not to compete seems only weakly probative evidence of fraudulent purpose. The more innocuous explanation of this position is that litigation presents a prime chance for a party to opportunistically expand its legal rights.

9

Dingman and Metals is not narrowly tailored . . . but rather is drafted vaguely and expansively . . . to maximize the restraint on competition . . . based on Schnitzer's national footprint rather than on Metals' much smaller sales territory and customer list."). As noted earlier, this provision could be just another case of imprecise drafting or an attempt to give a client the maximum possible protection. As for his termination from Prolerized New England LLC ("Prolerized"), Mr. Dingman pleads nothing more specific to suggest that it was not a legitimate response to his violation of company policy.[6] Although there are circumstances that might support the inference of such a scheme that Mr. Dingman contemplates,[7] the allegations of those circumstances themselves remain insufficient to plead fraud.

## IV. CONCLUSION

For these reasons, the Court GRANTS Schnitzer's Motion to Dismiss Defendant James Dingham's counterclaim. ECF No. 25.

---

[6] To the extent that Mr. Dingman continues to argue that Massachusetts law required Prolerized to inform him of certain rights (e.g., that the right to consult a lawyer before signing a non-compete agreement) or voided his earlier contract with Metals, the Court declines such an invitation to reconsider its prior rejection of this argument. *See Schnitzer Steel*, 2022 WL 16797058 at *3. Additionally, Mr. Dingman claims that he was terminated without good reason. ECF No. 17-2 at ¶ 12. Schnitzer terminated him for allegedly purchasing catalytic converters whose serial numbers were illegible or missing altogether. *Schnitzer Steel*, 2022 WL 16797058 at *3. Nevertheless, Mr. Dingman maintains that he was still able to accurately value these catalytic converters without a serial number. ECF No. 17-2 at ¶ 12. Whatever the case, such an employment dispute is not for this Court to adjudicate (at least not until Mr. Dingman alleges that his wrongful termination violated a particular law).

[7] The Court is not necessarily suggesting that Mr. Dingman's claims would survive the standard Rule 8 scrutiny under *Iqbal*. The Court need not decide that issue.

IT IS SO ORDERED:

_____
John J. McConnell, Jr.
Chief United States District Judge

January 18, 2023